UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICUS MORTGAGE CORPORATION
f/k/a ALLIED HOME MORTGAGE
CAPITAL CORPORATION,
     Plaintiff,

     v.                                    CIVIL ACTION NO.
                                           12-10861-GAO

THE ESTATE OF PETER BELLI,
     Judgment Debtor,


     and


IRENE MARK,
     Reach and Apply
     Defendant.


**REPORT AND RECOMMENDATION RE:**
**IRENE MARK'S MOTION TO DISMISS (DOCKET ENTRY # 44);**
**IRENE MARK AS SHE IS PERSONAL REPRESENTATIVE OF**
**ESTATE OF PETER BELLI'S MOTION TO DISMISS**
**(DOCKET ENTRY # 47)**

**January 28, 2014**


**BOWLER, U.S.M.J.**

Pending before this court are two motions to dismiss. Reach and apply defendant Irene Mark filed the first motion (Docket Entry # 44) whereas Irene Mark, "as she is Personal Representative of Estate of Peter Belli," filed the second motion (Docket Entry # 47). As explained below, the latter Irene Mark is not a party in this action. She is however a party in a

related action which is consolidated with this action for purposes of discovery and trial.[1]  Plaintiff Americus Mortgage Corporation f/k/a Allied Home Mortgage Capital Corporation ("Americus") opposes both motions.  (Docket Entry ## 52 & 55).  With briefing complete, the motions are ripe for review.

<u>PROCEDURAL BACKGROUND</u>

On May 14, 2012, Americus initiated this action by filing a complaint denoted as an "Action on Judgment."  (Docket Entry # 1).  Absent amendment, this complaint remains the governing complaint.  It names as parties The Estate of Peter Belli as judgment debtor and Irene Mark as reach and apply defendant.  Summons issued to each defendant on May 14, 2012.

As stated in two affidavits, a Server of Process personally served Irene Mark as reach and apply defendant with a copy the

---

[1]  On June 17, 2013, this court allowed a motion to consolidate filed in the related action, <u>Americus Mortgage Corporation f/k/a Allied Home Mortgage Capital Corporation v. Irene Mark, as Personal Representative of the Estate of Peter Belli, and Diamond Funding Corporation, Trustee Process Defendant</u>, Civil Action No. 12-10158-GAO ("<u>Allied</u> case").  The motion sought a consolidation "for *all* purposes."  (Docket Entry # 57, <u>Allied</u> case) (emphasis added).  The Memorandum and Order allowing the motion to consolidate however explicitly stated that the two separate complaints in each action "are retained in the consolidated action."  (Docket Entry # 36, p. 34); (Docket Entry # 99, <u>Allied</u> case).
Docket entries in the <u>Allied</u> case are denoted as such whereas docket entries in this case are set out without a case name.

summons and the complaint on May 15, 2012.[2]   (Docket Entry ## 4 &

12).   In light of the failure of Irene Mark as reach and apply

defendant to file a timely answer, a Deputy Clerk issued a notice

of default on August 8, 2012.   On August 17, 2012, Americus filed

a motion for a default judgment.   (Docket Entry # 8).   On August

24, 2012, the Estate of Peter Belli as judgment debtor and reach

and apply defendant Irene Mark filed an opposition to the motion

as well as an emergency motion to vacate the notice of default.

(Docket Entry ## 13 & 15).   Thereafter, Americus filed a motion

to withdraw the motion for a default judgment (Docket Entry # 16)

which this court allowed.   This court also deemed the motion to

set aside the notice of default "moot."[3]

The complaint seeks to collect a final judgment issued by

the court in Allied Home Mortgage Capital Corp. v. Peter Belli

and Regency Serv. Comp., Inc., Civil Action No. 07-11597-NG ("the

Allied court" or "the underlying action"), on March 8, 2011.

(Docket Entry # 1).   The final judgment awarded Allied Home

---

[2]   In a reply brief, reach and apply defendant Irene Mark
describes this "Proof of Service" as "phony."   (Docket Entry #
68).   Notwithstanding this allegation, the affidavits establish
proper service.

[3]   Americus presently argues that the notice of default
against reach and apply defendant Irene Mark remains in effect
and therefore precludes her from filing the motion to dismiss.
Americus served reach and apply defendant Irene Mark and the
Estate of Peter Belli with a copy of the complaint again on
August 18, 2013.   Five days later, reach and apply defendant
Irene Mark filed the motion to dismiss.

Mortgage Capital Corporation ("Allied"), which subsequently changed its name to Americus (Docket Entry # 58, <u>Allied</u> case), $2,394,857.20 with interest at 12% per annum and costs of $10,928.49 (Docket Entry # 1, ¶ 6).  The final judgment against Belli included an award of $75,000 on a "conversion claim in connection with the property and equipment from Foxboro and Milford offices."  (Docket Entry # 45-5, ¶ 3).  The judgment awarded the remaining damages against Belli for the claims of replevin, "intentional misrepresentation/fraud, negligent misrepresentation and breach of duty of loyalty claims."  (Docket Entry # 45-5).  With respect to the replevin claim, the judgment awarded $1,800 plus prejudgment interest "in connection with [Allied's] lease payments to the Marlborough Data Center (10/01-7/10)."  (Docket Entry # 45-5).  Notably for present purposes, the judgment declared that Allied was "entitled to immediate, sole and exclusive ownership and possession of the . . . pieces of computer equipment."  (Docket Entry # 45-5, ¶ 12).  The judgment listed each piece of equipment noting the location at a "data center operated by One Communications" in Marlborough, Massachusetts.  (Docket Entry # 45-5, ¶ 12).  The First Circuit affirmed the judgment on appeal.  Americus' attempt to collect the judgment have not been successful.

Count One in this action, captioned "Enforcement of Judgment," seeks to enforce the judgment against The Estate of

Peter Belli. (Docket Entry # 1) (Americus "seeks to enforce the terms and conditions of a . . . Judgment against Peter Belli (the 'Judgment Debtor')"). Counts two and three respectively set out a common law reach and apply claim and a statutory reach and apply claim against reach and apply defendant Irene Mark.[4] Count Four sets outs a claim under the Uniform Fraudulent Transfer Act ("UFTA"), Massachusetts General laws chapter 109A, sections one through 12.

Prior to filing this action, Allied filed the Allied case on January 30, 2012. Although brought against different parties, the Allied case seeks to collect the funds and the ownership interests awarded in the same, aforementioned final judgment issued by the Allied court. As amended, the Allied case contains the same four causes of action as this case. (Docket Entry # 104-1, Allied case). Americus brings Count One for enforcement of the judgment against Irene Mark, as the personal representative of the Estate of Peter Belli, and/or Diamond

---

[4] The complaint cites Massachusetts General Laws chapter 213, section three, for the statutory reach and apply claim in Count Three. This statute sets out rules for the Massachusetts Superior Court. Accordingly, this court construes the count as brought under Massachusetts General Laws chapter 214, section three, which sets out a statutory reach and apply cause of action. See Barclays Bank PLC v. Poynter, 710 F.3d 16, 19 n.2 (1st Cir. 2013) (the plaintiff "sued several reach and apply defendants, a practice allowed under Massachusetts law, Mass. Gen. Laws ch. 214, § 3(6)"); Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57 (D.Mass. 2002) ("Massachusetts General Laws chapter 214, § 3(6) is the reach and apply statute in the Commonwealth").

Funding.  Americus brings counts two through four against Diamond
Funding.[5]

On June 17, 2013, this court allowed the motion to
consolidate this action with the <u>Allied</u> case.  Given the absence
of a consolidated amended complaint and the fact that Americus
brought a number of the counts in the operative complaints
against different parties, the Memorandum and Order explained
that the operative complaints in each action "are retained in the
consolidated action."[6]

On August 23, 2013, "Irene Mark" filed the first motion to
dismiss and captioned the motion as "Irene Mark's Motion to
Dismiss."  (Docket Entry # 44).  The governing complaint however
is brought against "Irene Mark" only as a "reach and apply
defendant."  (Docket Entry # 1).  Accordingly, this court
construes this motion (Docket Entry # 44) in the only manner that
presents a viable basis, i.e., as filed by Irene Mark as she is a

---

[5]  On May 5, 2012, Americus filed a motion to amend the one
count original complaint to "include reach and apply (statutory
and common law) and Uniform Fraudulent Transfer Act (the "UFTA")
claims *against Diamond Funding*."  (Docket Entry # 32, <u>Allied</u>
case) (emphasis added).  This court allowed the motion.
Thereafter, Americus filed another motion to amend that simply
requested amendment to reflect the change in corporate name to
Americus.  (Docket Entry # 104, <u>Allied</u> case).  This court allowed
the motion in July 2012.

[6]  See footnote one.

reach and apply defendant.[7]

Irene Mark, "as she is Personal Representative of Estate of Peter Belli," filed the second motion to dismiss solely in this action.  (Docket Entry # 47).  The motion and supporting memorandum (Docket Entry ## 47 & 48) raise many of the same arguments raised in the first motion and supporting memorandum (Docket Entry ## 44 & 45).  Because Irene Mark, "as she is Personal Representative of Estate of Peter Belli," is not a party in the operative complaint in this action (Docket Entry # 1), a motion to dismiss her as personal representative is premature until the complaint is amended to include her as the personal representative of the Estate of Peter Belli.[8]  As currently brought, the complaint names only the Estate of Peter Belli, Judgment Debtor, and reach and apply defendant Irene Mark.

---

[7]  To complicate matters, reach and apply defendant Irene Mark's counsel signed the motion on behalf of "The Estate of Peter Belli & Irene Mark."  (Docket Entry # 44).  This court is recommending a denial of the motion, albeit without prejudice as to subject matter jurisdiction.  The same result adheres if the motion is also brought by the Estate of Peter Belli.  The addition of the Estate of Peter Belli as a movant does not yield a different recommendation based on the all of the arguments presented.

[8]  In the future, if a filing party wishes to have a motion apply to both the _Allied_ case and this case, it should file the motion in each action, include both civil action numbers in the caption and the names of the parties in each case in the caption. In fact, reach and apply defendant Irene Mark recognizes the need to file a motion in each case inasmuch as she did just that in seeking to compel a Fed.R.Civ.P. 30(b)(6) deposition of Americus. (Docket Entry # 49) (Docket Entry # 129, _Allied_ case).

<u>STANDARD OF REVIEW</u>

Reach and apply defendant Irene Mark ("Mark") moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").  To survive a Rule 12(b)(6) motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555-558 (2007).  Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Boroian v. Mueller</u>, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief."  <u>Feliciano-Hernandez v. Pereira-Castillo</u>, 663 F.3d 527, 533 (1st Cir. 2011) (internal quotation marks and citations omitted).  Discarding legal conclusions and taking the facts in the governing complaint as "true and read in a plaintiff's favor even if seemingly incredible," the complaint "must state a plausible, but not a merely conceivable, case for relief."  <u>Sepúlveda-Villarini v. Dept. of Educ.</u>, 628 F.3d 25, 29 (1st Cir. 2010); <u>accord</u> <u>Gorelik v. Costin</u>, 605 F.3d 118, 121 (1st Cir. 2010) ("factual allegations 'must be enough to raise a right

to relief above the speculative level'").

In order to assess the merits of a Rule 12(b)(6) motion, a court should consider the complaint and any documents attached to it.  See Trans-Spec v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008).  Exceptions to restricting review to the complaint exist "'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to [the] plaintiffs' claim; [and] for documents sufficiently referred to in the complaint.'"  Mississippi Public Employees' Retirement System v. Boston Scientific Corp., 523 F.3d 75, 86 (1st Cir. 2008) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (brackets in original).  To support the motion to dismiss, reach and apply defendant Irene Mark filed as exhibits an email chain (Docket Entry # 45-1), a notice of claim filed in the Probate and Family Court Department (Worcester Division) ("the probate court") (Docket Entry ## 45-2 & 45-3), the complaint (Docket Entry # 45-5), the final judgment issued by the Allied court (Docket Entry # 45-5) and a partially redacted asset purchase agreement (Docket Entry # 45-6).

Americus objects to consideration of any documents outside the confines of the complaint including the redacted asset purchase agreement.[9]  The notice of claim is an official public

---

[9]  In particular, Americus objects to the motion because it "improperly relies on matters outside the pleadings."  (Docket Entry # 52, p. 1).  Accordingly, Americus does not admit the

document and properly considered part of the Rule 12(b)(6) record.  See Arizmendi v. Lawson, 914 F.Supp. 1157, 1160 (E.D.Pa. 1996) (in resolving "Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions"). The complaint refers to the final judgment, an official public record, which is also part of the Rule 12(b)(6) record.  The complaint does not refer to the email chain or the asset purchase agreement.  Inasmuch as they do not fall within any of the foregoing exceptions, consideration of these documents is improper.  The facts as set out in the Rule 12(b)(6) record are as follows.

<u>FACTUAL BACKGROUND</u>

As stated in the complaint, the final judgment in the underlying action issued on March 8, 2011, and includes the above stated awards and declaration.  In December 2011, a writ of execution issued and a Deputy Sheriff made a demand upon Diamond Funding.  Diamond Funding refused to comply and Belli, in

---

authenticity of the asset purchase agreement or the notice of claim attached to the motion to dismiss.  Moreover, reach and apply defendant Irene Mark does not include an affidavit of authenticity for the exhibits attached to the motion including the redacted asset purchase agreement.  Americus explicitly cites to the excerpts of the asset purchase agreement and the notice of claim as extraneous material (Docket Entry # 45-2 & 45-6), albeit identifying them by the docket entries in the motion filed by Irene Mark as personal representative (Docket Entry ## 48-2 & 48-5).  (Docket Entry # 52).

response the writ, asserted that the Internal Revenue Service ("IRS") had a priority lien on his assets.  Although the IRS issued a notice of levy on Belli in August 2008 for the amount of $505,430.27, it temporarily closed the case in March 2011.  Since that time, the IRS has taken no further action to collect the amount.

Belli has not paid Americus any portion of the amounts owed under final judgment.  Americus has been unsuccessful in recovering any of the money from either Belli or Diamond Funding. Belli is now deceased.

Before his death, Belli and Irene Mark ("Mark") were romantic partners.  Belli provided Mark with funds that she used to purchase Diamond Funding from Ava Martinelli.  He provided the funds with the knowledge that the transfer would render Belli "insolvent or otherwise unable to pay any judgment obtained by Allied against him."  (Docket Entry # 1,  ¶ 50).  Belli also cosigned a promissory note used to purchase Diamond Funding.

As a capital contribution, Belli provided Mark and/or Diamond Funding with furniture, electronic equipment owned by Allied including a telephone system, a copier and a plasma television.  Indeed, Belli "transferred to Mark and/or Diamond Funding Allied's furniture and other equipment so that he could hinder" and/or delay "Allied in its ability to collect [the] judgment against Belli."  (Docket Entry # 1, ¶ 54).  Diamond

Funding is currently using the furniture and equipment that Belli provided to Mark and/or Diamond Funding.  Mark, who is the owner of Diamond Funding, is in possession of the assets, funds and personal property of Belli.

Belli provided valuable services to Diamond Funding prior to his death.  Diamond Funding did not compensate Belli for these services or it under compensated Belli for these services.  Belli named Mark a beneficiary in his will.  She is also the executrix of his estate.  The will designates Mark as the sole beneficiary of the tangible assets, including furniture, boats, clothing and jewelry.  It additionally designates her to receive a one third portion of a trust.

<u>DISCUSSION</u>

In seeking to dismiss the complaint under Rule 12(b)(6), reach and apply defendant Irene Mark raises a number of arguments.  Initially, she submits that she does not possess the computers and other property awarded in the final judgment. Rather, Diamond Funding and/or Americus has possession of the property.

In particular, she asserts that the equipment was held in a "neutral" storage facility before the March 8, 2011 final judgment.  (Docket Entry # 45).  She maintains that, "When judgment entered, the property was released to Allied."  (Docket Entry # 45).  She additionally argues that, "This claim is in bad

faith" because Americus "was returned the property it now claims Diamond possesses and was awarded money damages for any of the missing property." (Docket Entry # 45).

The complaint, taken as true for present purposes, however states that Allied and now Americus recovered the judgment against Belli and has been unable to collect the award from either Belli or Diamond. It further states that, "Mark is in possession, custody, and control of the assets, trusts, funds, and/or personal property" of Belli. (Docket Entry # 1, ¶¶ 19, 23 & 45). Moreover, when Belli provided Mark with the funds to purchase Diamond Funding, he retained an ownership interest in the assets of Diamond Funding. He also "concealed his possession of Allied's furniture and equipment by giving it to Mark for use by Diamond Funding." (Docket Entry # 1, ¶ 57).

Such allegations are sufficient to withstand a motion to dismiss the reach and apply claims. A statutory reach and apply claim requires a showing of "(1) the indebtedness of the defendant and [that] (2) the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57 (D.Mass. 2002); Iantosca v. Benistar Administrative Services, Inc., 843 F.Supp.2d 148, 152 (D.Mass. 2012); see Springfield Redevelopment Authority v. Garcia, 691 N.E.2d 965, 968 (Mass.App.Ct. 1998) (reach and apply action requires

"establishment of an indebtedness on the part of the principal defendant to the plaintiff" and "collecting the debt, when established, out of property rights which cannot be reached on an execution") (internal quotation marks omitted); see also In re Martin, 468 B.R. 479, 485 (Bkrtcy.D.Mass. 2012) ("'the plaintiff in a non-statutory action to reach and apply must be a judgment creditor'"). The judgment satisfies the indebtedness requirement and the foregoing statements in the complaint provide more than plausible support for the second requirement.

It is true that the final judgment declares that Allied "is entitled to immediate, sole and exclusive ownership and possession" of the computer equipment at the Marlborough data center. An entitlement to possess the equipment is not the same as having actual possession of the equipment. Again, the complaint states that Belli supplied equipment to Mark and/or Diamond Funding and that the equipment "is currently being used by Diamond." (Docket Entry # 1, ¶¶ 32-36, 45 & 53-54). The complaint does not state that Allied recovered the pieces of computer equipment or that Americus is seeking to recover these specific pieces of equipment. Rather, the complaint alleges generally that Americus is seeking to recover "equipment" or that it "is the rightful owner of the equipment Belli supplied to Mark and/or Diamond." (Docket Entry # 1, ¶ 33). Construing the complaint in Americus' favor, as required under Rule 12(b)(6),

14

the references to equipment include the pieces of computer equipment awarded in the final judgment such that the complaint alleges that Belli transferred this computer equipment to Mark and/or Diamond and that Diamond is currently using the equipment. A dismissal because the "claim is in bad faith" (Docket Entry # 45, p. 3) or because Allied or Americus purportedly have possession of the computer equipment is therefore unavailing. See, e.g., Alvin J. Coleman & Son, Inc. v. Francis Harvey & Sons, Inc., 2012 WL 3686641, *1 (D.Mass. Aug. 23, 2012) (reach and apply claim "not subject to dismissal for bad faith" because plaintiffs "met their burden by pleading an agreement with Defendants, work performed under the agreement, non-payment by the Defendants, and then monies owed to Defendants possibly in the hands of the Reach and Apply Defendants").

Next, reach and apply defendant Irene Mark argues that, "The Judgment did not order Belli to turn [the computer equipment] over because he did not have possession of it.  Because there is no allegation that Belli ever received the equipment in error from the rental or storage facility, the complaint fails to state even a colorable claim for recovery of the equipment from Diamond," according to reach and apply defendant Irene Mark. (Docket Entry # 45).  She further reasons that the judgment awarded the equipment to Allied and that Allied either recovered the property or has a claim against the storage facility.  The

difficulty with this argument is that the complaint states that

the Allied court found that Belli "was in possession of sixteen

computer servers, networking devices, and other equipment and

that 'Allied has a right to immediate possession of this

equipment.'"  (Docket Entry # 1, ¶ 34) (citing Docket Entry # 320

in Civil Action No. 07-11597-NG, p. 17).  The cited Memorandum

and Order by the Allied court in the complaint confirms that

Belli refused to return the property in the Marlborough data

center to Allied:

> Allied requests the return from Belli of seventeen pieces of
> computer equipment that remain housed at the Marlborough
> data center pursuant to its claim of replevin.  Given
> Allied's complaint, I take the following as true as a matter
> of law:  Allied owns sixteen of the twenty-two servers and
> other networking devices that were housed in the Marlborough
> data center at the time Allied filed its complaint.  Compl.
> ¶ 4 (exhibit #P-4).  Allied has a right to immediate
> possession of this equipment and has asked Belli to return
> the property that is Allied's.  Id. ¶ 56.  Belli has refused
> to return Allied's equipment.  Id. ¶ 31 . . . Based on this
> evidence, I hold that Allied is the rightful owner of the
> above-named servers and equipment, *and order Belli to return
> all of these devices that are in his possession.*

(Docket Entry # 320, pp. 17-18, Civil Action No. 07-11597-NG)

(emphasis added).  The facts in the Rule 12(b)(6) record

therefore refute the foregoing argument.

Reach and apply defendant Irene Mark next submits that

because the Allied court awarded Allied $75,000 for the

equipment, Americus cannot recover the equipment under principles

of "res judicata, collateral estoppel and case estoppel"[10] as well
as the bar against a "double recovery" for the same injury.
(Docket Entry ## 44 & 45).  She points out that the Allied court
awarded Allied monetary damages ($75,000) for missing equipment
consisting of a television and a telephone system.  The
complaint, in turn, seeks recovery of the telephone system and
the plasma television that Belli transferred to Mark or Diamond
Funding in order to satisfy the judgment.  (Docket Entry # 1, ¶¶
32, 41 & 44-45).

    In assessing damages in the underlying action, the Allied
court determined that the property at the Milford and Foxboro
offices included "'copy machines, computers, a plasma display and
a digital camera, which are all owned by Allied.'"[11]  (Docket
Entry # 320, p. 23, Civil Action No. 07-11597-NG).  The court
additionally noted that, notwithstanding numerous demands made by
Allied, Belli refused to return the property.  Although Allied
originally sought the fair market value of the equipment and the
property "stored in the former Milford and Foxboro offices," it
abandoned the request because "Belli wrongfully spoliated" the

---

[10]   Reach and apply defendant Irene Mark fails to provide
any legal support for the "case estoppel" argument thereby
waiving the issue for purposes of the motion to dismiss.

[11]   As previously explained, this court may examine matters
of public record such as the Memorandum and Order on damages in
the underlying action (Docket Entry # 320, Civil Action No. 07-
11597-NG) without converting the motion to dismiss into a motion
for summary judgment.

property "at a weekend sale, in defiance of [the Allied court's] preliminary injunctions." (Docket Entry # 320, Civil Action No. 07-11576-NG). In lieu of the fair market value, Allied instead sought "only $75,000" which the final judgment awarded as damages under the conversion claim along with prejudgment interest. (Docket Entry # 320, Civil Action No. 07-11576-NG).

Claim preclusion under Massachusetts law requires three elements: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the merits." Gloucester Marine Railways Corp. v. Charles Parisi, Inc., 631 N.E.2d 1021, 1024 (Mass.App.Ct. 1994); see Iantosca v. Step Plan Services, Inc., 604 F.3d 24, 30 (1st Cir. 2010) ("[i]n considering the preclusive effect of a Massachusetts judgment, we look to Massachusetts law"). When it applies, the doctrine bars "'relitigation of all matters that were or could have been adjudicated in the action.'" O'Neill v. City Manager of Cambridge, 700 N.E.2d 530, 533 (Mass. 1998) (emphasis omitted). Reach and apply defendant Irene Mark was not a party in the underlying action and she fails to argue, let alone establish, her privity with a party in that action. See O'Connell v. Marrero-Recio, 724 F.3d 117, 124 (1st Cir. 2013) (discussing waiver); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999). She also fails to argue, let alone establish, that a conversion claim is the same cause of

action as a reach and apply or UFTA claim.  Finally, a default
judgment is not ordinarily a judgment on the merits on the
underlying claims.  See Treglia v. MacDonald, 717 N.E.2d 249, 253
(Mass. 1999) ("reaffirm[ing] that preclusive effect should not be
given to issues or claims that were not actually litigated in a
prior action" and "that generally in the case of a judgment
entered by default, none of the issues is actually litigated or
decided").

Issue preclusion bars "'relitigation of an issue determined
in an earlier action where the same issue arises in a later
action, based on a different claim, between the same parties or
their privies.'"  Kobrin v. Board of Registration in Medicine,
832 N.E.2d 628, 634 (Mass. 2005); accord Anusavice v. Board of
Registration in Dentistry, 889 N.E.2d 953, 963 n.16 (Mass. 2008)
It requires establishing that "'(1) there was a final judgment on
the merits in the prior adjudication; (2) the party against whom
estoppel is asserted was a party (or in privity with a party) to
the prior adjudication; and (3) the issue in the prior
adjudication is identical to the issue in the current
adjudication.'"  Kobrin v. Board of Registration in Medicine, 832
N.E.2d at 634.  Furthermore, "'the issue decided in the prior
adjudication must have been essential to the earlier judgment.'"
Id.

Here, the issue of whether Allied was entitled to enforce

19

the judgment and reach the plasma television or telephone system held by Mark to satisfy the judgment was neither litigated nor decided in the underlying action.  The Allied court rendered a decision on the merits of the amount of damages and, as a sanction, entered a default judgment finding liability on the claims.  Ordinarily, Massachusetts law does not afford preclusive effect to issues or claims not decided on the merits but, instead, "decided" in a default judgment rendered as a discovery sanction.  See Treglia v. MacDonald, 717 N.E.2d at 253; In re Strangie, 192 F.3d 192, 194 (1st Cir. 1999); Dawe v. Capital One Bank, 456 F.Supp.2d 236, 241 (D.Mass. 2006) ("issue preclusion is not applicable in the present case, as the state court action was dismissed as a discovery sanction for Capital One's failure to comply with the court's discovery order"); see also Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 95 (1st Cir. 2010) ("default judgment generally is not a judgment on the merits of the underlying claim in issue preclusion cases because a default judgment does not decide the merits of that claim").[12]

Alternatively, reach and apply defendant Irene Mark fails to identify the issue decided by the Allied court and essential to the judgment.[13]  In addition, reach and apply defendant Irene Mark

---

[12]  The NAPS decision is not directly on point because it does not apply Massachusetts law.

[13]  Although she refers to the final judgment, she does not refer to the 44 page Memorandum and Order let alone identify the

was not a party in the underlying action and she fails to argue
she was in privity for purposes of issue preclusion with a party
in that action.[14]   See O'Connell v. Marrero-Recio, 724 F.3d at
124; Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d at 260.
Accordingly, issue preclusion does not provide a basis for a Rule
12(b)(6) dismissal.

  With respect to the double recovery argument, it is well
settled that, "The law abhors duplicative recoveries; thus double
awards for the same injury are impermissible." Bogan v. City of
Boston, 489 F.3d 417, 425 (1st Cir. 2007) (internal brackets and
quotation marks omitted); accord Acevedo-Garcia v. Monroig, 351
F.3d 547, 567 (1st Cir. 2003) ("double awards for the same injury
are impermissible").  Americus has yet to recover the $75,000
award of damages on the conversion claim.  Even assuming that it
is seeking to reach the same equipment as sought in the
conversion claim, i.e., the plasma television and telephone
system, the purpose is to satisfy the existing $75,000 award.
The prayer for relief in the complaint only seeks "up to the

---

issue decided therein by the Allied court that is identical to an
issue before this court.  She only generally alleges that "the
issue of the equipment [the television and telephone system] was
fully litigated and [Allied] sought and received a monetary
award."  (Docket Entry # 45).

  [14]  The argument that "Mark is being sued in her capacity as
Representative of the Estate of Peter Belli" and "[t]hus, the
parties are identical" (Docket Entry # 45) is misguided because
she is not being sued as a representative of the estate in this
action.  She is only being sued as a reach and apply defendant.

amount of the Judgment" (Docket Entry # 1, ¶¶ 2-3, p. 10).  It does not seek an amount greater than the judgment.  The introductory paragraph of the complaint likewise seeks the property in the possession of reach and apply defendant Irene Mark "up to and including the amount of the Judgment ($2,405,785.69), plus accrued interest."  (Docket Entry # 1, p. 2).  Americus is not seeking a recovery of both the equipment and $75,000.  Rather, it is seeking the equipment as a means to satisfy no more than the amount of the judgment.  At this stage, the argument does not provide a basis to dismiss the reach and apply claims or the UFTA claim.

Reach and apply defendant Irene Mark also argues that Americus does not have standing to bring this action because it sold its assets, including the right to the proceeds in the underlying action, to Allied Home Mortgage Corporation in 2001. In making the argument, reach and apply defendant Irene Mark relies solely on the asset purchase agreement.  As previously explained, the agreement is not part of the Rule 12(b)(6) record. Accordingly, the argument does not provide a basis to dismiss this action.

As a final matter, reach and apply defendant Irene Mark moves to dismiss this action because the probate court has exclusive jurisdiction over the claims.  Americus contends that the probate exception to diversity jurisdiction does not apply.

By statute, the probate court has "exclusive original jurisdiction of actions for divorce or for affirming or annulling marriage" as well as "all actions concerning the execution and validity of health care proxies created under chapter 201D and caregiver authorization affidavits created under chapter 201F or disputes arising thereunder." Mass. Gen. L. ch. 215, § 3. Otherwise, it has "original and *concurrent* jurisdiction with the supreme judicial court and the superior court department of all cases . . . involving in any way the estate of a deceased person . . . .." Mass. Gen. L. ch. 215, § 6 ("section six") (emphasis added). Section six affords the probate court "general equity jurisdiction" over a common law reach and apply action. See Foster v. Evans, 429 N.E.2d 995, 996-999 (Mass. 1981). The probate court also has "all the powers which the supreme judicial and superior courts have in relation to actions to reach and apply" with respect to an attachment "by injunction to reach shares of stock or other property which cannot be reached to be attached in a civil action." Mass. Gen. L. ch. 215, § 6A. Undeniably, the probate court, which also has the power to enforce judgments, see Mass. Gen. L. ch. 215, § 34, has jurisdiction to adjudicate this dispute.

The jurisdiction of this court is premised on diversity of

citizenship.[15]  "[F]ederal courts have jurisdiction to entertain suits to determine the rights of creditors, legatees, heirs, and other claimants against a decedent's estate, 'so long as the federal court does not _interfere_ with the probate proceedings.'" Marshall v. Marshall, 547 U.S. 293, 311 (2006) (emphasis added). As explained by the Supreme Court in Marshall, the probate exception to diversity jurisdiction "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."  Id. at 311-312.  In accordance with "the probate exception to diversity jurisdiction, 'a federal court may not probate a will, administer an estate, or entertain an action that would interfere with pending probate proceedings in a state court or with a state court's control of property in its custody.'"  Mangieri v. Mangieri, 226 F.3d 1, 2 (1st Cir. 2000). The exception does not, however, "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  Marshall v. Marshall, 547 U.S. at 312.

"'As a general matter, courts tend to view the probate exception as extending to all suits "ancillary" to the probate of a will.'"  Mangieri v. Mangieri, 226 F.3d at 2-3 (quoting Georges

---

[15]  Americus, formerly known as Allied, is a Texas corporation with a principal place of business in Houston.

v. Glick, 856 F.2d 971, 973 (7th Cir. 1988)).  It is also

"'obvious that insofar as [a] complaint requests the district

court to order the defendants to turn over to the plaintiff

property which they received in their capacity as fiduciaries,

and for which they are accountable to the probate court, the

federal district court had no jurisdiction.'"  Id. at 3 (quoting

Kittredge v. Stevens, 126 F.2d 263, 266 (1st Cir. 1942)).

Conversely, "'Where exercise of federal jurisdiction will result

in a judgment that does not dispose of property in the custody of

a state probate court, even though the judgment may be

intertwined with and binding on those state proceedings, the

federal courts retain their jurisdiction.'"  Jimenez v.

Rodriquez-Pagan, 597 F.3d 18, 24 (1st Cir. 2010) (internal

brackets omitted).

    Although Americus is not asking this court to administer the

Estate of Peter Belli or to probate his will, the reach and apply

and the UFTA claims potentially implicate property that is

subject to the probate court proceeding.  Indeed, as stated in

the complaint filed a few months after Belli's death, "Americus

seeks to recover" the "assets, trusts, funds, and personal

property of" Belli that are in the possession of reach and apply

defendant Irene Mark.[16]  (Docket Entry # 1).  At this point, the

---

[16]  Americus' brief similarly states that it is seeking "to
recover the monies and assets in [Mark's] personal possession
that rightfully should belong to the estate of Peter Belli."

record before this court does not sufficiently establish that the
equipment or other property Americus seeks to reach and apply
against the amount owed in the final judgment is in the custody
of the probate court.  In other words, it is not apparent whether
Americus seeks to reach and apply the assets held by Irene Mark
as the executor or personal representative of the Estate of Peter
Belli.  If true, however, this court would lack subject matter
jurisdiction over the present dispute.  See Marshall v. Marshall,
547 U.S. at 311-312 (probate exception "precludes federal courts
from endeavoring to dispose of property that is in the custody of
a state probate court"); Mangieri v. Mangieri, 226 F.3d at 3
(district court lacks jurisdiction over dispute insofar as
complaint requests federal "'district court to order the
defendants to turn over to the plaintiff property which they
received in their capacity as fiduciaries, and for which they are
accountable to the probate court'").

     "It is black-letter law that a federal court has an
obligation to inquire sua sponte into its own subject matter
jurisdiction."  McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004).
This court would benefit from further briefing and evidentiary
submissions indicative of what property is presently in the
custody of the probate court and whether Americus seeks to reach
such property in the case at bar.  The parties are afforded up to

---

(Docket Entry # 52, § III).

and including March 7, 2014, to file a brief or a motion limited solely to the application of the probate exception to diversity jurisdiction as it applies to this case.[17]

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[18] that reach and apply defendant Irene Mark's motion to dismiss (Docket Entry # 44) be **DENIED** except with respect to the lack of jurisdiction argument which is **DENIED** without prejudice. The parties are afforded up to and including March 7, 2014, to file a brief or a motion limited solely to the application of the probate exception to diversity jurisdiction as it applies to this case. This court further **RECOMMENDS**[19] that the motion to dismiss Irene Mark as she is personal representative of the Estate of Peter Belli (Docket Entry # 47) be **DENIED** without prejudice as premature because, in her capacity as personal representative of

---

[17] As noted in ruling on a motion to extend in the <u>Allied</u> case (Docket Entry # 130, <u>Allied</u> case), the same reasons serve as a basis to allow a limited extension of the dispositive motion deadline solely to allow a brief or motion confined to the application of the probate exception to diversity jurisdiction as it applies to that case.

[18] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. <u>See</u> Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

[19] See the previous footnote.

the Estate of Peter Belli, she is not a party in this action.


   /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge